David A. SWECKER, Petitioner,

v.

Larry HUGHEY et al., Respondents.

Supreme Court of Tennessee.

Oct. 3, 1977.

G. P. Gaby, Greeneville, Tom H. Rogan, Rogersville, for petitioner.

S. Morris Hadden, William C. Bovender, Kingsport, Winfield B. Hale, Jr., Rogersville, for respondents.

OPINION

HARBISON, Justice.

In this personal injury action the trial court directed a verdict for the plaintiff, petitioner here, on the issues of liability against the respondents, a general contractor and a subcontractor. Plaintiff was employed by a supervising engineer and was injured by flying rock and debris from blasting operations conducted by the contractors.

The only issue submitted to the jury by the trial judge was that of damages, and the jury returned a verdict for the petitioner in the amount of eighty thousand dollars. On appeal to the Court of Appeals, each of the respondents contended that it was entitled to a directed verdict, and also that the trial judge had erred in directing a verdict for the plaintiff. It was insisted that an issue of fact was presented on the question of assumption of risk.

All of these issues were resolved in favor of the petitioner by the Court of Appeals and are not before us. The Court of Appeals, however, in a divided decision, suggested a remittitur of twenty-five percent of the verdict, reducing it to sixty thousand dollars. The petitioner accepted the remittitur under protest and, pursuant to the provisions of T.C.A. § 27–119, filed a petition for certiorari with this Court, which was granted.

While we recognize and agree with the legal authorities cited by the Court of Appeals with respect to its prerogative and duty to suggest a remittitur, our review of the evidence in the instant case leads us to the conclusion that the amount of damages awarded by the jury and approved by the trial judge should not have been disturbed.

The petitioner was a nineteen-year-old college student at the time of the accident. He was working his way through college on a "co-op" program, in which he attended school and worked during alternate years. He had completed one year of engineering studies and was engaged in field work for the supervising engineer on a public utility project when he was injured. The record reveals no prior physical impairment or illness, and the petitioner was earning about $110 dollars per week at the time of the accident.

He was struck and rendered unconscious by a piece of rock, which fractured the right rear portion of his skull, driving debris and bone splinters into the brain. At surgery the broken fragments of skull were removed, together with injured brain tissue, the attending neurosurgeon testifying that the plaintiff was left with a hole in the skull, oval in shape, measuring about three inches by two inches. The portion of brain which was removed measured approximately one and one-half to two inches in circumference and about one inch in depth.

The accident occurred on November 9, 1973, and petitioner was hospitalized for about six weeks. He was placed on anticonvulsive medication which he took three times a day. When he first became ambulatory he experienced clumsiness and weakness in the manipulation of his left arm and leg, the left side of the body being controlled by the right side of the brain. This condition improved, but the petitioner continued to suffer from headaches. He apparently made a good recovery from the surgery, however, and was able to return to work during February 1974. He worked for the next six months and did not require further medical care during that interim, but continued to take Dilantin to prevent post-operative seizures. In August 1974 he was hospitalized again so that a plastic plate or covering could be inserted into his skull, this being affixed to the bony tissue by wire sutures. He was thereafter discharged and resumed normal activities.

During the spring of 1975, however, petitioner began to experience numbness in his left hand, and by the time of trial he testified that he had experienced some ten or eleven periods of numbness, weakness and brief periods of inability to use the left hand. These incidents were described by his physician as post-traumatic epilepsy. The neurosurgeon testified that scar tissue had formed in the area where a portion of the brain had been removed, and that petitioner could be subject to future seizures as the result of pressure from scar tissue. He also said that the removal of a portion of the brain of the petitioner limited certain fine movements or maneuvers in the extremities on the left side. The physician estimated that from all of the injuries and surgery to which petitioner had been subjected, he would retain twenty-five to thirty percent permanent partial disability to the body as a whole. Mortality tables showed a life expectancy in excess of fifty

years for an average person of the petitioner's age and sex. Petitioner incurred approximately five thousand, four hundred dollars in lost wages, medical and hospital expenses.

Neither of the respondents offered countervailing medical testimony, nor did counsel for the respondents argue the issue of damages to the jury.

While it is elementary that there is no exact yardstick or measurement to determine the appropriate size of verdicts in personal injury cases, we are of the opinion that a verdict of eighty thousand dollars for the serious and permanent brain injury sustained by this petitioner is not unreasonable, excessive or so far beyond amounts allowed in other similar cases as to warrant exercise by the appellate courts of their admitted authority to suggest reduction. Both the trial judge and the jury saw and observed the petitioner who, according to the oral argument of counsel, made an excellent impression as a witness, and who, under any view of the evidence, had sustained a most serious and permanent injury. Concededly, he had made a good recovery and the jury would certainly have been warranted in returning a smaller amount than that which they gave; on the other hand, the medical testimony is such that an even larger amount probably could have been sustained.

While in no way wishing to deter the Court of Appeals from the exercise of its important duties and authority in reviewing jury verdicts, we are of the opinion that this verdict should not have been disturbed and, pursuant to the provisions of T.C.A. § 27–119, we feel it appropriate to reinstate the award fixed by the jury.

The judgment of the Court of Appeals is accordingly reversed and the judgment of the trial court is reinstated at the cost of respondents.

COOPER, C. J., and FONES, HENRY and BROCK, JJ., concur.